Michael F. Perlis (SBN: 095992)
mperlis@lockelord.com
Richard Johnson (SBN: 198117)
rrjohnson@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone:  213-485-1500
Fax:  213-485-1200

Attorneys for Defendant
MARKEL AMERICAN INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEYERS FINANCIAL SERVICES, INC., a California corporation, and LILLIAN MEYERS, <br><br> Plaintiffs, <br><br> vs. <br><br> MARKEL AMERICAN INSURANCE CO., and DOES 1 through 20, <br><br> Defendants. | CASE NO. 4:19-CV-03531-SBA <br><br> Assigned for all purposes to: <br> Hon. Saundra Brown Armstrong <br><br> **MARKEL AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [28 U.S.C. §§ 1332,1441 and 1446] <br><br> [Removed from the Superior Court of California, County of Sonoma, Case No. SCV 264560] <br><br> Date: August 14, 2019 <br> Time: 2:00 p.m <br><br> Complaint Filed: June 5, 2019 <br> Removal Filed: |

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

71712522v.1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE** that, on Wednesday, August 14, at 2:00 p.m., before the Honorable Saundra B. Armstrong, in the Courtroom to be assigned at the Oakland Division of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendant, Markel American Insurance Company ("MAIC"), will, and hereby does, make this Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiffs, Meyers Financial Services, Inc. ("MFS" or the "Insured") and Lillian M. Meyers ("Ms. Meyers" [collectively, with MFS, "Plaintiffs"]), for Breach of Contract, "Bad Faith," and Declaratory Relief, for failure to state a claim upon which relief can be granted.

MAIC's Motion is made on the ground that the pleadings on their face, and matters of which the Court may take judicial notice, disclose that: (A) Plaintiffs cannot plead a breach-of-contract claim against MAIC because there is no coverage even potentially available under the relevant insurance policy for the underlying litigation for which Plaintiffs seek coverage; and (B) Plaintiffs cannot plead a "bad faith" claim against MAIC because no benefits are due under the Policy (and even if benefits were due they are being withheld in good faith on the basis of a genuine dispute).[1]

MAIC's Motion, which is made after the requisite conference of counsel, which occurred telephonically on June 19, 2019, is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Plaintiffs' pleadings and the documents attached thereto (including, without limitation the relevant insurance policy and the pleadings in the underlying action for which Plaintiffs seek coverage), the concurrently-filed Request for Judicial Notice and all matters of which the Court may properly take judicial notice, the Reply brief and any other papers filed or to be filed with the Court, any oral arguments of counsel, the legal authorities cited to or by the Court, and any other matters the Court may properly consider.

Dated:  June 24, 2019

Respectfully submitted,
LOCKE LORD LLP
By: _/s/ Michael F. Perlis_____
       Michael F. Perlis
       Richard R. Johnson
*Attorneys for Defendant*
*MARKEL AMERICAN INSURANCE COMPANY*

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

---

[1] The dismissal of these claims would render the declaratory relief claim moot.

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.      INTRODUCTION .....................................................................................................................1

II.     BACKGROUND ......................................................................................................................3

III.    ARGUMENT ...........................................................................................................................4

        A.      Standards on a Motion to Dismiss......................................................................4

        B.      Plaintiffs Cannot Plead Breach of Contrast As There Is No Coverage ..........5

                1.      The *Wrobel* Action Did Not Allege Wrongful Acts Potentially Covered
                        under the Policy's Insuring Agreement ...........................................................5

                2.      The *Wrobel* Action Is Also Excluded By Various Exclusions......................11

                3.      The *Wrobel* Action Did Not Seek Covered Insurable Loss............................12

                4.      MAIC Therefore Had No Duty to Defend the *Wrobel* Action ......................12

        C.      Plaintiffs Have Not Pled Any "Bad Faith" Claim Against MAIC .............................13

                1.      Plaintiffs Cannot Plead "Bad Faith" Because No Benefits Are Due..............13

                2.      The Genuine Dispute Doctrine Precludes Any "Bad Faith" Claim................13

IV.     CONCLUSION.......................................................................................................................14

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                     **Page(s)**

3

*Acoustics, Inc. v. Trepte Construction Co.,*
    14 Cal. App. 3d 887 (1971) ................................................................. 5

4

5

*Aerojet–General Corp. v. Transport Indemnity Co.,*
    17 Cal. 4th 38, 58 (1997) ................................................................. 12

6

*American Casualty v. Union Welfare Fund,*
    113 Nev. 764, 942 P. 2d  172(1997) ................................................. 10

7

8

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................... 4

9

*August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.,*
    146 Cal. App. 4th 565 (2007) ......................................................... 10

10

*Bank of California, N.A. v. Opie,*
    663 F. 2d 977 (9th Cir. 1981) ........................................................ 9,10

11

12

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254, 833 P. 2d 545 (1992) ............................................. 12

13

*Baylor Heating & Air v. Federated Mut.,*
    987 F. 2d 415 (7th Cir. 1993) ........................................................ 10

14

15

*Bell Atlantic Corporation v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..................... 5

16

17

*Benavides v. State Farm Gen. Ins. Co.,*
    136 Cal. App. 4th 1241 (2006) ...................................................... 13

18

*Branch v. Tunnell,*
    14 F. 3d 449 (9th Cir. 1994) ........................................................... 5

19

20

*Bryant v. Avado Brands, Inc.,*
    187 F. 3d 1271, 1281, fn. 16 (11th Cir. 1999) ................................... 5

21

22

*Buss v. Superior Court,*
    16 Cal. 4th 35 (1997) ................................................................... 12

23

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,*
    90 Cal. App. 4th  335(2001) ...................................................... 13, 14

24

25

*City Products Corp. v. Globe Indemnity Co.,*
    88 Cal. App. 3d 31 (1979) ............................................................ 12

26

27

*Continental Cas. Co. v. City of Richmond,*
    763 F. 2d 1076 (9th Cir. 1985) ...................................................... 11

28

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

71712522v.1

*Dalyrymple v. United Servs. Auto. Ass'n,*
   40 Cal. App. 4th 497 (1995) ................................................................14

*Delgado v. Heritage Life Ins. Co.,*
   157 Cal. App. 3d 262 (1984) ...............................................................13

*Fraley v. Allstate Ins. Co.,*
   81 Cal. App. 4th 1282 (2001) .............................................................14

*Gen. Acc. Ins. Co. v. Namesnik,*
   790 F.2d 1397 (9th Cir. 1986) ............................................................10

*Guebara v. Allstate Ins. Co.,*
   237 F. 3d 987, 993 (9th Cir. 2001) ....................................................14

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
   896 F. 2d 1542 (9th Cir. 1990) .............................................................5

*Hearn v. R.J. Reynolds Tobacco Co.,*
   279 F. Supp. 2d 1096 (D. Az. 2003) .....................................................5

*Helus v. Equitable Life Assur. Soc. of U.S.,*
   309 F. Supp. 2d 1170 (N.D. Cal. 2004) ..............................................13

*Isaacson v. California Insurance Guarantee Assn.,*
   44 Cal. 3d 775 (1988) ...........................................................................5

*James River Insurance Company v. Medolac Laboratories,*
   290 F. Supp. 3d 956 (C. D. Cal. 2018) ..............................................11

*Kaufman & Broad–South Bay v. Unisys Corp.,*
   822 F. Supp. 1468 (N.D. Cal. 1993) .....................................................5

*Level 3 Commc'ns., Inc. v. Fed. Ins. Co.,*
   272 F. 3d 908, 911 (7th Cir. 2001) .....................................................12

*Los Angeles Lakers v. Fed. Ins. Co.,*
   869 F. 3d 795, 801 (9th Cir. 2017) .....................................................11

*Love v. Fire Ins. Exchange,*
   221 Cal. App. 3d 1136 (1990) ............................................................13

*Medill v. Westport Ins. Corp.,*
   143 Cal. App. 4th 819 (2006) .............................................................11

*Navigators Ins. Co. v. Hamlin,*
   96 F. Supp. 3d 1181 (D. Or 2015) ...................................................9, 10

*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.,*
   10 Fed. Appx. 438 (9th Cir. 2001) ......................................................11

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Olson v. Fed. Ins. Co.*,
    219 Cal. App. 3d 252 (1990) ...................................................................................8

*Pacific Ins. Co., Ltd. v. Eaton Vance Management*,
    369 F. 3d 584, 590 (1st Cir. 2004) .........................................................................10

*Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*,
    471 F. 3d 961 (9th Cir. 2006) ................................................................................12

*Peterson v. Superior Court*,
    31 Cal. 3d 147 (1982) ............................................................................................12

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
    394 F. 3d 761, 765 (9th Cir. 2005) ......................................................................9,10

*PPG Industries, Inc. v. Transamerica Ins. Co.*,
    20 Cal. 4th 310 (1999) ...........................................................................................12

*Scottsdale Ins. Co. v. MV Transp.*,
    36 Cal. 4th 643 (2005) ...........................................................................................12

*Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*,
    106 Cal. App. 4th 293 (2003) ................................................................................11

*Trenches, Inc. v. Hanover Ins. Co.*,
    No. CV 12–627–AG, 2012 WL 12507967 (C.D. Cal. Aug. 10, 2012) .................11

*Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*,
    283 F. 2d 659 (9th Cir. 1960) ................................................................................11

*Unified W. Grocers v. Twin City Fire Ins. Co.*,
    457 F. 3d 1106 (9th Cir. 2006) ..............................................................................12

*Venture Assocs. Corp. v. Zenith Data Systems Corp.*,
    987 F. 2d 429, 431 (7th Cir. 1993) ..........................................................................5

*Waller v. Truck Ins. Exch., Inc.*
    11 Cal. 4th 1, 36 (1995) .........................................................................................13

**Statutes**

10 Cal. Code of Reg. § 260.238(f) ................................................................................3

Cal. Civ. § 1485 .............................................................................................................13

Cal. Ins. Code, § 533 .....................................................................................................12

Investment Advisers Act of 1940, § 206(2) ....................................................................4

Fed. R. Civ. Code § 12(b)(6) ..........................................................................................4

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

MAIC respectfully requests that this Court dismiss the Complaint, without leave to amend, because Plaintiffs have not pled, and cannot possibly plead, any breach-of-contract (let alone "bad faith") claim against MAIC upon which relief may be granted.  This is the case because, as this Court can see from the pleadings and rule as a matter of law, there is no coverage even potentially available under the relevant insurance policy for the underlying litigation for which Plaintiffs seek coverage.

Plaintiffs and MAIC are parties to a contract of insurance, *viz.*, Professional Services and Directors and Officers Liability Insurance Policy # FP83837C, issued by MAIC to MFS for the Policy Period of December 30, 2018 to December 30, 2019 (the "Policy").   The Policy provides coverage (subject to its terms and conditions and applicable law) to MFS for certain types of professional liability claims for damages allegedly incurred in connection with the rendering or failure to render certain Professional Services (or Investment Advisory Services) as specifically defined in the Policy. Plaintiffs assert in their Complaint that MAIC has breached the Policy (and the associated implied covenant of good faith and fair dealing) by denying their claim for coverage under the Policy with respect to underlying litigation captioned, *William D. Wrobel v. Meyers Financial Services, et al.*, Sonoma County California Super. Ct. Case No. SCV-264114 (the "*Wrobel* Action").

Plaintiff in the *Wrobel* Action alleges, as the gravamen of his claims against MFS and Ms. Meyers, that he made personal loans totaling $510,000 to a certain Ms. Shackelford (an individual he alleged to be an employee, agent, or servant of MFS, but who is not identified in any Application or scheduled in the Policy), and that she has failed to repay him as agreed.  According to well-established principles set forth in controlling Ninth Circuit precedent, such allegations of taking and failing to repay personal loans do not qualify as claims for professional services covered by professional liability insurance.  As shown below, no coverage is even potentially available for the *Wrobel* Action under the Policy's Insuring Agreements because (among other reasons) it does not allege any potentially covered Wrongful Acts (*i.e.*, "any actual or alleged error, misstatement, misleading statement, negligent act or omission, or neglect or breach of duty . . . by [MFS] or its insured persons, solely in their capacities as such, in rendering or failing to render professional services")—an issue as to which

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

the Insureds bear (and cannot possibly meet) the burden.  It is as simple as that, and MAIC did not breach the Policy (let alone in bad faith) by denying coverage for the *Wrobel* Action pursuant to applicable law.

While the *Wrobel* Action makes certain boilerplate allegations that MFS and Ms. Meyers allegedly breached fiduciary duties to Mr. Wrobel as his investment advisers in connection with the loans (and seeks legally uninsurable punitive damages against them on that basis), such allegations do not create a potential for coverage under the Policy because what matters, for purposes of the relevant express Policy language and California law applying the same, is the conduct alleged, not the title of the person accused or the labels attached to causes of action.  Mr. Wrobel's claims are premised entirely upon the $510,000 in personal loans for which he seeks repayment (plus interest, punitive damages, and judicial foreclosure of an associated deed of trust on Ms. Shackelford's residence).

This Court may properly rule, as a matter of law, that there is no coverage even potentially available for the *Wrobel* Action under the relevant insurance policy MAIC issued to Plaintiffs, for various reasons, including the following:

- That it does not allege Wrongful Acts by Insureds, acting solely in an insured capacity, in rendering or failing to render Professional Services (as a well-established body of case law from California and throughout the Ninth Circuit holds that taking and failing to repay personal loans from clients do not qualify as professional services) and therefore does not trigger coverage under the Policy's Insuring Agreements.

- That it is excluded from coverage pursuant to the Policy's contract exclusion.

- That it does not seek legally insurable covered Loss as defined by the Policy, but rather only disgorgement/restitution, repayment of contractual debts, and/or punitive damages, all of which are excepted from the Policy's definition of Loss and uninsurable as a matter of California law.

Since there is no coverage potentially available for the *Wrobel* Action under the Policy, and thus no duty to defend under California law, Plaintiffs cannot assert a breach-of-contract or "bad faith" claim against MAIC premised upon its denial of coverage for the matter.  Moreover, even if some coverage were ultimately determined to be available under the Policy for the *Wrobel* Action, Plaintiffs still could not plead a "bad faith" claim against MAIC based upon its declination of coverage because

it had at the very least a good faith position regarding a genuine dispute.[2]  Therefore, Plaintiffs'

Complaint should be dismissed without leave to amend because they have not pled, and cannot plead,

any claim against MAIC on which relief may be granted.[3]

## II.   **BACKGROUND**

Plaintiffs seek coverage under the Policy for a "Complaint for Breach of Fiduciary Duties,

Breach of Contract, [and] Financial Elder Abuse" filed on March 14, 2019 in the California Superior

Court for the County of Sonoma by an alleged client of the Insured, William D. Wrobel, Trustee of

the William D. Wrobel Trust dated 10/13/2005 (the "*Wrobel* Action" or "*Wrobel* Complaint").  Copies

of the *Wrobel* Complaint and the Policy are attached to the Complaint.  Relevant portions of the Policy

are quoted in pertinent part in the Argument section below.

Mr. Wrobel, a client of the Insured, MFS, which acted as his "investment advisor" from

December 19, 2017 through October of 2018 pursuant to a written contract entitled, "Investment

Advisory Agreement" ("IAA") (a copy of which was attached to the *Wrobel* Complaint[4]), alleges, as

---

[2] Plaintiffs cannot even plead an actionable breach-of-contract claim against MAIC in this case because the correspondence on which they purport to premise their "bad faith" claim confirms that MAIC offered to reconsider its coverage denial if Plaintiffs supplied information (if any) that addressed MAIC's coverage concerns and supported coverage, which they refused to do.  While Plaintiffs failed to attached that correspondence to their Complaint, MAIC has attached it to its concurrently filed *Request for Judicial Notice* ("RJN"), and this Court may properly consider it in ruling on this Motion as Plaintiffs plead it as a purported basis of their Complaint.

[3] Finally, we would note that while Plaintiffs alleged that MAIC threatened to sue its Insureds, a review of the correspondence attached to the RJN confirms that Plaintiffs' allegation is not accurate.  To the contrary, after the Insured's counsel made numerous groundless threats against MAIC and *ad hominem* attacks against MAIC's claim examiner, MAIC's counsel warned the Insureds' counsel in a letter that his claims were frivolous and contrary to fact and law and that MAIC would hold him (not his clients) accountable for any damages caused by his conduct.  In actuality, MAIC's counsel intended to send a letter that was worded slightly differently (and merely noted that, while his threats were without merit, counsel was free to take whatever action he deemed appropriate) but, as a result of a clerical error, inadvertently sent a different version.  Either way, however, MAIC did not threaten to sue its Insureds.  Rather, MAIC explained why coverage was not available based upon the pleadings and facts known to MAIC, but requested that the Insured provide (and offered to reconsider its coverage denial based upon) any additional facts that might support coverage.  The Insured's counsel, however, rejected that invitation, and opted instead to make the threats and *ad hominem* attacks to which MAIC's counsel responded.

[4] Nothing in the IAA provides that MFS or any of its employees or agents will borrow money from Mr. Wrobel within the course and scope of their professional services (and, indeed, taking such personal loans from a client is a prohibited practice under 10 Cal. Code of Reg. § 260.238(f), which

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

the gravamen of the *Wrobel* Action, that:

(1)     Mr. Wrobel made two personal loans totaling $510,000 (one for $30,000 and one for $480,000) to Stephanie Shackelford (an individual alleged to be an employee, agent, or servant of the Insured but not identified in any Application or scheduled in the Policy);

(2)     Ms. Shackelford has breached a Promissory Note with respect to the $30,000 loan, and an Installment Agreement (secured by a Deed of Trust on her residence) with respect to the $480,000 loan, by failing to repay the loans as agreed;

(3)     Mr. Wrobel has elected to call the note and institute judicial foreclosure pursuant to the Installment Agreement; and

(4)     Ms. Shackelford, in taking the loans, and MFS and Ms. Meyers (as Ms. Shackelford's alleged "employer, principal and/or master"), "breached their fiduciary duties to Mr. Wrobel as his financial and investment advisor under the IAA and the rules of professional care and ethics of a certified investment advisory and financial planner, including those requiring the avoidance of any conflicts of interest, duty of full disclosure to the client, and not borrowing funds from the client."[5]

## III.   ARGUMENT

### A.     Standards on a Motion to Dismiss.

To survive a 12(b)(6) motion, a complaint "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949,

---

governs California Registered Investment Advisers such as MFS). The violation of the state regulation would also likely constitute a violation of Section 206(2) of the Investment Advisers Act of 1940 (Prohibited Transaction of Investment Advisers) as it would impose a substantial risk on the adviser. The IAA specifies that the Insured will provide "only investment management" services, with respect to Mr. Wrobel's IRA account and Trust account, for a 1% annual fee, and unspecified financial planning and consulting services for $300/hour.

[5] While the legal labels that claimants choose to attach to claims are not significant for purposes of coverage, we note for the Court's reference that the *Wrobel* Action asserts the following causes of action: (1) Breach of Contract (under the Promissory Note) against Shackelford; (2) Breach of Fiduciary Duties against all Defendants; (3) Financial Elder Abuse against Shackelford (based on the $30,000 loan); (4) Breach of Contract-Judicial Foreclosure (under the Installment Agreement) against Shackelford; (5) Breach of Fiduciary Duties-Rescission and Restitution (of the Installment Agreement) against all Defendants; (6) Financial Elder Abuse against Shackelford (based on the $480,000 loan). The *Wrobel* Action prays for: (1) damages in the amount of unpaid principal, interest, and penalties on the $30,000 loan; (2) punitive damages not greater than four times actual damages (for breach of fiduciary duty); (3) rescission of the Installment Agreement on the $480,000 loan; (4) judicial foreclosure on Ms. Shackelford's principal residence under the Deed of Trust securing the $480,000 loan; (5) reimbursement of $1,121.50 in title insurance, title, and escrow fees, plus interest (incurred in connection with the Deed of Trust on the $480,000 loan); (6) exemplary damages equal to his actual damages (for breach of fiduciary duty); and (7) attorney's fees and costs of suit.

1    173 L.Ed.2d 868 (2009), *quoting Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.

2    1955, 167 L.Ed.2d 929 (2007).  While the Court must accept all well-pleaded factual allegations in

3    the complaint as true, such allegations must be more than speculative and must constitute more than

4    mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007).  When

5    ruling on this Motion, this Court may consider not only the pleadings, and the documents attached

6    thereto as exhibits, but also any documents of undisputed authenticity upon which Plaintiffs purport

7    to premise their claims.[6]  Where the documents upon which a plaintiff's claim is premised do not

8    support that claim, the complaint may be dismissed.[7]

9    **B.**    **Plaintiffs Cannot Plead Breach of Contract As There Is No Coverage.**

10         To state a claim for breach of contract, a plaintiff must allege: (1) that plaintiff and defendant

11   entered into a contract (in this case the Policy); (2) that plaintiff did (or was excused from doing) every

12   significant thing the contract required him to do; (3) that defendant failed to do something the contract

13   required him to do; and (4) that plaintiff incurred damage as a result of that failure.  *See, e.g., Acoustics,*

14   *Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971).

15        In the context of an insurance policy, an Insured plaintiff must satisfy elements 3 and 4 above

16   by pleading that a defendant insurer failed to pay a covered loss or breached a duty to defend (or, in

17   some circumstances, to accept global settlement offers within policy limits).  *See, e.g., Isaacson v.*

18   *California Insurance Guarantee Assn.*, 44 Cal. 3d 775, 791 (1988) ("w]rongful failure to provide

19   coverage or defend a claim is a breach of contract.").

20        In this instance, Plaintiffs have not pled and cannot plead a breach-of-contract claim against

21   MAIC because (as demonstrated below) there is no coverage even potentially available under the

22   Policy for the *Wrobel* Action.

23        **1.**    **The *Wrobel* Action Did Not Allege Wrongful Acts Potentially Covered under the**

24

---

25   [6] *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F. 2d 1542, 1555 (9th Cir. 1990); *Kaufman*
     *& Broad–South Bay v. Unisys Corp.*, 822 F. Supp. 1468, 1472 (N.D. Cal. 1993); *Hearn v. R.J.*

26   *Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1101 (D. Az. 2003).

27   [7] *See, Branch v. Tunnell*, 14 F. 3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith*
     *v. County of Santa Clara*, 307 F. 3d 1119, 1127 [9th Cir. 2002]); *Bryant v. Avado Brands, Inc.*, 187 F.

28   3d 1271, 1281, fn. 16 (11th Cir. 1999); *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.
     2d 429, 431 (7th Cir. 1993).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**Policy's Insuring Agreement.**

The Insuring Agreements set forth the basic scope of coverage (if any) available under the Policy (subject to its other terms and conditions and applicable law). They provide, in pertinent part, that MAIC "will pay, on behalf of an [**insured adviser** or **professional service provider**] or [its/their] **insured persons**, **loss** which they become legally obligated to pay as a result of a **claim** first made against them and reported during the Policy Period or Extended Reporting Period, if applicable." (*Dkt. # 1*, p. 29, § I. A. 1.-2.) To trigger the Insuring Agreements, the *Wrobel* Action must qualify as a "**claim**" seeking "**loss**" against an "**insured adviser**," "**professional service provider**," or "**insured person**," as those terms are defined by the Policy. As demonstrated below, however, it does not.

The Policy defines "**claim**" to mean, in pertinent part, a "civil proceeding commenced by the service of a complaint or similar pleading … made upon an **insured** for a **wrongful act**." (*Id.*, p. 30-31, § II. E.) Therefore, to qualify as a "**claim**" for which coverage might potentially be available under the Insuring Agreements, the *Wrobel* Action must allege "**wrongful acts**," as defined by the Policy. As shown below, however, the *Wrobel* Action is not a **claim** because it does not allege **wrongful acts**.

The Policy defines "**wrongful act**" to mean "any actual or alleged error, misstatement, misleading statement, negligent act or omission, or neglect or breach of duty by any [**insured adviser/Professional service provider**] or its **insured persons**, solely in their capacities as such, in rendering or failing to render [**investment advisory services/professional services**.]" (*Id.*, p. 35, § II. OO., 1.-2.) Thus, to allege "**wrongful acts**," as defined by the Policy, the *Wrobel* Action must allege the following three prongs: (i) an "actual or alleged error, misstatement, misleading statement, negligent act or omission, or neglect or breach of duty by any [**insured adviser** or **Professional Service provider**] or its **insured persons**, (ii) <u>solely in their capacities as such,</u> (iii) in rendering or failing to render [**investment advisory services** or **professional services**]." (*Id.*) In this case, however, none of the above three prongs is satisfied.

First, Ms. Shackelford does not qualify as an **insured person**, particularly with respect to the prohibited activity of taking out personal loans from clients.

The Policy defines "**insured person**," in pertinent part, as follows:

Any person who has been, now is or will become an employee of an **insured entity**, but solely while providing **accounting services**, **investment advisory services**, **life**

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**and health services** or **professional services** on behalf of such **insured entity**[.] …

**Insured person** does not include independent contractors unless specifically endorsed by name to this Policy.

(*Id.*, p. 31-32, § II. S.) [8]

Ms. Shackelford (who is alleged to have been an employee, agent, or servant of MFS and Ms. Meyers) does not appear to qualify as an **insured person**. If she is or was an independent contractor, then she would only be an **insured person** if she were specifically identified in an endorsement to the Policy, which she is not. If she is or was an employee of MFS, then she would be an **insured person**, but "solely while providing **accounting services**, **investment advisory services**, **life and health services** or **professional services** on behalf of the Insured." (*Id.* [underscoring added].)

In the *Wrobel* Action, however, she is not alleged to have provided any such services, and she is being sued for borrowing money from Mr. Wrobel, which does not qualify as one of those services. Accordingly, absent receipt of additional contrary information (which MAIC requested that MFS provide if it believed that there was any), she did not qualify as an insured person being sued in an insured capacity, and MAIC correctly denied coverage on that basis.

Indeed, in their Answer to the *Wrobel* Complaint, MFS and Ms. Meyers admitted, as their Ninth Affirmative Defense, that they "never provided written authorization for the transactions which form the basis of Plaintiff's complaint, and therefore Stephanie Shackelford was not authorized to act as Defendants' agent with respect to the transactions in question." (*RJN*, Ex. A, ¶ 11.) Plaintiffs' admission in this regard, of which this Court may properly take judicial notice in ruling on this Motion, suggests that Ms. Shackelford was not even an employee, and confirms at the very least that she was acting outside the scope of such employment if she was an employee. Notably, Ms. Shackelford herself has not challenged MAIC's denial of coverage. Thus, the Plaintiffs admit that they cannot possibly carry their burden on this issue.

Second, Ms. Shackelford (even assuming *arguendo* that she did qualify as an **insured** [which

---

[8] While MFS appears to qualify as an "**insured adviser**" as that term is defined by the Policy (assuming that it is registered as an "investment adviser" as defined in the Investment Advisers Act of 1940), as it is the Named Insured and renders **investment advisory services** to others, and Ms. Meyers, as the President of the Named Insured, would qualify as an **insured person**, they are not being sued for rendering or failing to render **investment advisory services** or **professional services**.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   the Insured did not and cannot carry its burden of establishing]) is not alleged to have acted <u>solely</u> in

2   her capacity as an **insured** in regard to the matters alleged in the *Wrobel* Action.   While California

3   case law on the term "solely" would preclude coverage for Ms. Shackelford if she were acting in a

4   mixed capacity, she is only alleged in the *Wrobel* Action to have been acting in an uninsured capacity.

5   *See, e.g., Olson v. Fed. Ins. Co.*, 219 Cal. App. 3d 252 (1990).

6   Third, none of the conduct alleged as the gravamen of the *Wrobel* Action (*viz.*, borrowing

7   money from Mr. Wrobel, executing contracts in connection therewith, and failing to pay monies owed

8   pursuant to those written contracts) involves the rendering or failing to render **investment advisory**

9   **services** or **professional services** as those phrases are defined in the Policy.   The Policy defines

10   "**investment advisory services**" to mean "financial, economic or investment advice regarding

11   investments or investment management services performed or required to be performed by an **insured**

12   **adviser**[9] for or on behalf of a customer pursuant to a written agreement between such customer and

13   the **insured adviser** for a fee, commission, other monetary consideration, **pro bono** or other

14   remuneration which inures to the benefit of the **insured adviser**" and further provides that

15   "**investment advisory services** includes financial planning services." (*Id.*, p. 32, § II.U.)

16   The Policy defines "**professional service(s)**" to mean "services rendered for or advice given

17   to others by an insured for a fee, remuneration, pro bono or other consideration in an **insured's**

18   business and explicitly listed on the **Professional Service Providers** endorsement to this Policy." (*Id.*,

19   p. 33, § II. EE.)   The Endorsement entitled "**Schedule of Professional Services Providers**," in turn

20   lists "Meyers Financial Services, Inc." as the only **Professional Service Provider**,[10] and describes the

21   professional services provided as:

22   Divorce Financial Consultant Rendering services related to a divorce or dissolution of
    civil union, domestic partnership or same-sex marriage including, but not limited to,
23   advising on and supervising the financial aspects of divorce or dissolution Expert
24   witness testimony as a Divorce Financial Consultant, divorce mediation, collaborative

25   —————————————————
    [9] **Insured adviser(s)** means "the Named Entity that is a registered "investment adviser" as defined in
26   the Investment Advisers Act of 1940, and its amendments, and which renders **investment advisory**
    **services** to others." (*Id.*, p. 31, § II. P.)

27   [10] **Professional service provider** means "any individual or entity specifically listed on the Schedule
28   of Professional Service Providers endorsement to this Policy that renders **professional services**, but
    only while such individual or entity is acting on behalf of the Named Entity." (*Id.*, p. 33, § II. FF.)

71712522v.1

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

divorce services, expense and income tracings, and financial techniques for the sole purpose of dividing assets or identifying methods for liquidation of client assets including pension valuations. Assisting a licensed attorney to prepare a Qualified Domestic Relations Order, a pre-nuptial agreement or a post-nuptial agreement.

(*Id.*, p. 60.)

None of those services include borrowing money from Mr. Wrobel (which is prohibited in any event), executing contracts in connection therewith, or failing to pay monies owed pursuant to those written contracts, since none of those activities have anything to do with divorce. Therefore, those activities do not qualify as **professional services**. Accordingly, the conduct alleged in the Complaint does not qualify as "**wrongful acts**" as defined in the Policy. Thus, the *Wrobel* Action is not a "**claim**" as defined by the Policy, and MAIC correctly denied coverage on this basis.

As noted above, MAIC's declination of coverage on this basis is supported by a substantial body of case law from California and throughout the Ninth Circuit. In fact, this case is very similar to the recent case of *Navigators Ins. Co. v. Hamlin*, 96 F. Supp. 3d 1181 (D. Or. 2015), in which the Court followed established Ninth Circuit precedent in ruling that the Insured's default on $660,000 in loans from his client, secured by promissory notes, was not covered by his professional accounting malpractice policy. The fact that the client pled that the Insured breached professional fiduciary duties by taking out and failing to repay the loans was irrelevant, as what matters (for purposes of coverage) is the alleged conduct (and whether it satisfied the Policy's definition of professional services), not the status or title of the person accused or the labels attached to causes of action by the claimant.

The following discussion from the *Hamlin* decision is instructive:

Hamlin places great emphasis on the fact that she had a fiduciary relationship with Blackburn, but this focus is misplaced. The Ninth Circuit has repeatedly held that the proper inquiry to determine what conduct falls under "professional services" is the nature of the act itself, not the status of the party performing the act or the status of the party harmed:

Something more than an act flowing from mere employment or vocation is essential.... A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill[.] ... In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 394 F. 3d 761, 765 (9th Cir. 2005) (*quoting Bank of California, N.A. v. Opie*, 663 F. 2d 977, 981 (9th Cir. 1981)).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

In a case with facts similar to the Hamlin Claim, the Ninth Circuit held that an insured who solicited funds from his clients, with whom he had a fiduciary relationship, did not act within the scope of his "professional services" as defined by the malpractice insurance contract. *See Gen. Acc. Ins. Co. v. Namesnik*, 790 F. 2d 1397 (9th Cir. 1986). In *Namesnik*, the insured was an attorney and a licensed CPA. *Id.* at 1398. The insured had a fiduciary relationship with his clients, for whom he routinely performed tax returns. *Id.* The insured solicited funds from his clients for them to invest in corporations and partnerships that the insured operated, resulting in losses in the millions of dollars. *Id.* The insured's clients in *Namesnik* argued that the insured was acting as their "financial advisor," or as their "accountant and financial advisor." *Id.* at 1399–1400.

Citing *Opie*, the court noted that the existence of an attorney-client relationship was not dispositive as to whether the conduct in dispute was part of the insured's "professional services" as defined by the malpractice insurance contract. *Id.* at 1399. The court then concluded that despite the fiduciary relationship, the uncontroverted evidence demonstrated that the insured had acted as a business agent and not an attorney, therefore his conduct fell outside the scope of "professional services." *Id.* at 1400.

In this case, Blackburn also had a fiduciary relationship with Hamlin, and, like the insured in *Namesnik*, Blackburn routinely performed Hamlin's tax returns. Similar to the insured in *Namesnik*, Blackburn solicited funds from Hamlin for her to invest with him, resulting in substantial losses. Like the clients in *Namesnik*, Hamlin argues that Blackburn owed her a fiduciary duty as her accountant and investment adviser. However, as was the case with the insured in *Namesnik*, Blackburn's actions were not part of his "professional services" as defined in his accounting malpractice insurance policy.

Hamlin has not carried her burden to prove the policy provides coverage, so Navigators has no duty to indemnify Blackburn in connection with the Hamlin Claim.[11]

In addition, California courts hold that the failure to pay monies owed pursuant to contract (*e.g.*, Ms. Shackelford's failure to repay the loans as required by the promissory note and installment agreement) does not qualify as a covered Wrongful Act, since the money was already owed pursuant to the preexisting contracts, not as damages flowing from the wrongful act of failing to pay it.[12]

---

[11] *Navigators Ins. Co. v. Hamlin*, 96 F. Supp. 3d 1181, 1186-1187 (D. Or. 2015), *citing*, *PMI Mortg. Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 394 F. 3d 761 (9th Cir. 2005); *General Acc. Ins. Co. v. Namesnik*, 790 F. 2d 1397 (9th Cir. 1986); *Bank of California, N.A. v. Opie*, 663 F. 2d 977, 981 (9th Cir. 1981).

[12] *See, e.g., August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.*, 146 Cal. App. 4th 565, (2007) (failure to pay monies owed pursuant to a contract is not a covered Wrongful Act; *citing*, *Pacific Ins. Co., Ltd. v. Eaton Vance Management*, 369 F. 3d 584, 590 (1st Cir. 2004); *Baylor Heating & Air v. Federated Mut.*, 987 F. 2d 415, 419-420 (7th Cir. 1993) (same); *American Casualty v. Union Welfare Fund*, 113 Nev. 764, 942 P. 2d 172, 175-176 (1997) (same).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

2.      **The *Wrobel* Action Is Also Excluded By Various Exclusions.**

Even assuming, *arguendo*, however, that the *Wrobel* Action were otherwise potentially covered under the Policy's Insuring Agreements, it would nevertheless be excluded from coverage pursuant to various exclusions, including (without limitation) Exclusion I (Breach of Contract).  (*Dkt. # 1*, p. 36, § III. I.)  Exclusion I provides that the Policy provides no coverage for any loss in connection with any claim alleging, arising out of, based upon, or attributable to breach of contract.  While this exclusion does not apply to any **claim** for rendering or failing to render **investment advisory services**, **accounting services**, **life and health services** or **professional services**, Mr. Wrobel does not make any such claim, as noted above.

The Exclusions' introductory phrase, "alleging, arising out of, based upon, or attributable to," is construed very broadly by California courts.[13]  While Mr. Wrobel asserts various causes of action, all of them arise out of and are based upon Ms. Shackelford's alleged breach of her Promissory Note and Installment Agreement.  Exclusion I would also preclude coverage for the attorney's fees Mr. Wrobel requests pursuant to contract.  As another District Court has held in the most recent decision on point, *James River*, on the basis of longstanding precedent cited in its opinion, the insurer has no duty to defend, when, as in this case, all of the conduct alleged in the action has its "origin in", "grows out of", or "has connection with" the conduct underlying the alleged breach.  *James River Insurance Company v. Medolac Laboratories*, 290 F. Supp. 3d 956, at 970.  (The exclusion in this case is even

---

[13] *See, e.g., James River Insurance Company v. Medolac Laboratories*, 290 F. Supp. 3d 956, 967-970 (C. D. Cal. 2018) (addressing a somewhat narrower contract exclusion); *citing, Los Angeles Lakers v. Fed. Ins. Co.*, 869 F. 3d 795, 801 (9th Cir. 2017) (policy containing exclusion for claims "based upon, arising from, or in consequence of invasion of privacy" interpreted broadly because "California courts and our court have consistently given a broad interpretation to the clause 'arising from' in an insurance contract"); *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 Fed. Appx. 438, 440 (9th Cir. 2001); *Continental Cas. Co. v. City of Richmond*, 763 F. 2d 1076, 1080 (9th Cir. 1985) (broadly interpreting "arising from" in insurance policy exclusion provision); *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F. 2d 659, 664 (9th Cir. 1960) (broadly interpreting "arising from" in an insurance policy exclusion as "connot[ing] ... something broader than causation"); *Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) ("As this court has noted, the ' "arising out of" connective ... broadly links' the exclusionary operative events with the exclusion." (citations omitted)); *Trenches, Inc. v. Hanover Ins. Co.*, No. CV 12–627–AG, 2012 WL 12507967, at *7 (C.D. Cal. Aug. 10, 2012); *see also, Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 836 (2006).

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

broader.)  Accordingly, even if coverage were available under the Insuring Agreements, Exclusion I would preclude coverage for the *Wrobel* Action in its entirety and all causes of action asserted therein.

**3.      The *Wrobel* Action Did Not Seek Covered Insurable Loss**

Even assuming, however, that the *Wrobel* Action otherwise qualified as a **claim** potentially covered under the Policy's Insuring Agreements, it would nevertheless not be covered because it does not seek "**loss**," as defined by the Policy.  This is so because the Policy defines "**loss**" so as not to include "[a]ny amount not insurable under the law pursuant to which this Policy is construed, except as provided above with respect to punitive, exemplary or multiplied damages" [which, while covered under the Policy if permitted by law are legally uninsurable in California]. (*Dkt. # 1*, p. 32, § II. Y.)

California law provides that the restitution/disgorgement of monies wrongly acquired or withheld and directly assessed punitive damages, which are the principal monetary remedies requested in the *Wrobel* Action, are uninsurable as a matter of law.[14]  Thus, the recoveries sought do not qualify as **loss** potentially covered under the Policy, and MAIC correctly denied coverage on that basis.[15]

**4.      MAIC Therefore Had No Duty to Defend the *Wrobel* Action.**

Since there is no indemnity coverage potentially available under the policy for the matters alleged in the *Wrobel* Action, MAIC had no duty under California law to defend the Plaintiffs. *See, e.g., Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 657 (2005); *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997); *Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 58 (1997).

---

[14] *See, e.g., Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 833 P. 2d 545, 553 (1992); *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F. 3d 961, 966–69 (9th Cir. 2006); *Unified W. Grocers v. Twin City Fire Ins. Co.*, 457 F. 3d 1106, 1115 (9th Cir. 2006) ("The label of 'restitution' or 'damages' does not dictate whether a loss is insurable"), *citing, Level 3 Commc'ns., Inc. v. Fed. Ins. Co.*, 272 F. 3d 908, 911 (7th Cir. 2001) (holding disgorgement uninsurable even where labeled as "damages"); *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 317-318 (1999) (punitive damages uninsurable in California), *citing,* Cal. Ins. Code, § 533; *Peterson v. Superior Court*, 31 Cal. 3d 147, 157 (1982); *City Products Corp. v. Globe Indemnity Co.*, 88 Cal. App. 3d 31, 39-41 (1979).

[15] The only sum claimed by Mr. Wrobel, other than the uninsurable restitution/disgorgement of monies owed on the personal loans (plus interest owed pursuant to contract) and the uninsurable punitive damages, was $1,121.50 Mr. Wrobel spent on title insurance, escrow, and title fees (which are not damages caused by some error in the provision of professional services but rather amounts Mr. Wrobel paid in connection with the deed of trust that he is now seeking to enforce with respect to his personal loans to Ms. Shackelford).  Even assuming, *arguendo*, however, that the $1,121.50 did qualify as covered loss, it nevertheless would fall within the Policy's $5,000 retention.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   Accordingly, MAIC did not have, let alone breach, any duties under the Policy with respect to the

2   *Wrobel* Action, and Plaintiffs cannot state a breach-of-contract claim against MAIC on which relief

3   can be granted.

4   **C.   Plaintiffs Have Not Pled Any "Bad Faith" Claim Against MAIC.**

5          To state a claim for "bad faith," a plaintiff must allege: (1) that benefits due under the policy

6   have been withheld; and (2) that the Insurer's reason for withholding benefits was unreasonable or

7   without proper cause.  *See, Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (1990).[16]

8          **1.   Plaintiffs Cannot Plead "Bad Faith" Because No Benefits Are Due.**

9          As noted above, Plaintiffs have not pled even the first element (withholding of benefits due),

10  let alone the second.[17]   Therefore, Plaintiffs have not stated, and cannot ever state, any claim against

11  MAIC for "bad faith."

12         **2.   The Genuine Dispute Doctrine Precludes Any "Bad Faith" Claim.**

13         In order to establish "bad faith" liability, "it must be shown that the insurer acted unreasonably

14  or without proper cause." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.

15  App. 4th 335, 347 (2001). Consistently with this principle, the "genuine dispute" doctrine precludes a

16

---

17  [16] *See also*, *e.g.*, *Waller v. Truck Ins. Exch.*, Inc. 11 Cal. 4th 1, 36 (1995) ("the conclusion that a bad
18  faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which
    the duty of good faith is [firmly] rooted" brackets in original; internal quotes omitted]); *Benavides v.*
19  *State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1251-1252 (2006) (there is no bad faith liability
    absent a covered loss, *i.e.*, benefits due under the policy); *Delgado v. Heritage Life Ins. Co.*, 157 Cal.
20  App. 3d 262, 278, fn. 6 (1984) (no matter how hostile or egregious an insurer's conduct toward the
    insured may have been prior to payment, absent an unreasonable delay or actual withholding of
21  benefits, there is no breach of contract and likewise no breach of the implied covenant), *Helus v.*
    *Equitable Life Assur. Soc. of U.S.*, 309 F. Supp. 2d 1170, 1183, fn. 13 (N.D. Cal. 2004) (applying
22  Calif. law).

23  [17] Moreover, Plaintiffs could not possibly amend the Complaint to allege the <u>withholding</u> of benefits
24  due because: (1) there are no unpaid benefits currently due under the Policy; and (2) MAIC offered to
    reconsider its denial of coverage if the Insured submitted any information demonstrating that Ms.
25  Shackelford qualifies as an Insured being sued in an Insured capacity (absent which demonstration no
    benefits could even potentially be due under the Policy).  MAIC's offer to consider any evidence
26  submitted in favor of coverage, and to make any payment ultimately determined to be due under the
    Policy based upon such information extinguishes MAIC's obligations under the Policy in this regard,
27  rendering any contract claim nonactionable.  *See*, Cal. Civ. Section 1485 ("[A]n obligation is
    extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with
28  the intent to extinguish the obligation").

finding of bad faith liability against an insurer that reasonably, even if erroneously, interprets the policy at issue:

> It is now settled law in California that an insurer denying or delaying payment of policy benefits due to the existence of a genuine dispute as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable in breach of contract.

*Chateau Chamberay*, 90 Cal. App. 4th, at 346; *see also*, *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2001), *Dalyrymple v. United Servs. Auto. Ass'n*, 40 Cal. App. 4th 497, 519-520 (1995); *Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 993 (9th Cir. 2001) ("The Ninth Circuit has affirmed dismissal of bad faith claims in numerous cases . . . because of genuine issues about liability under California law.").

## IV.   **CONCLUSION**

For all of the foregoing reasons, MAIC respectfully requests that this Court grant its Motion to Dismiss the Complaint without leave to amend.

Dated: June 24, 2019

Respectfully submitted,
LOCKE LORD LLP
By: */s/ Michael F. Perlis*
     Michael F. Perlis
     Richard R. Johnson
*Attorneys for Defendant*
*MARKEL AMERICAN INSURANCE COMPANY*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

STATE OF CALIFORNIA          )               **PROOF OF SERVICE**
COUNTY OF LOS ANGELES      )    ss.

2

3

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is: 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  On June

4

24, 2019, I served the foregoing document described as:

5

## MARKEL AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

6

7

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service.  (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

8

☐    **BY PERSONAL SERVICE.** I placed ___ the original or ___ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such

9

      envelope to be delivered by hand to the offices of each addressee.

☐    **BY FACSIMILE TRANSMISSION.** I caused ___ the original or ___ a true copy of the foregoing

10

      document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action

11

      and served upon this office.

☑    **BY MAIL.** I placed ___ the original or ✓ a true copy of the foregoing document in a sealed

12

      enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at  300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.

13

      Each envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail is

14

      deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

15

☐    **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or

16

      she has filed in this action and served upon this office.

☐    **BY EXPRESS MAIL.** I placed ___ the original or ___ a true copy of the foregoing document in a sealed

17

      enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at  300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.

18

      Each envelope was mailed with Express Mail postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail

19

      is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

20

☐    **BY FEDERAL EXPRESS.** I placed ___ the original or ___ a true copy of the foregoing document in a sealed enveloped or package designated by Federal Express with delivery fees paid or provided for,

21

      individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Los Angeles, CA  90071, to an

22

      authorized courier or driver authorized by Federal Express to receive documents.

☑    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is

23

      true and correct.

☐    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose

24

      direction the service was made.

Executed on June 24, 2019 at Los Angeles, California.

25

26

_____

27

              Ana Chairez

28

1

## Service List

*Meyers Financial Services, Inc., et al. v. Markel American Insurance Company and Does 1-10*
**Case No. 4:19-CV-03531-SBA**

| | |
|---|---|
| Lewis R. Warren, Esq.<br>Michael R. Wanser, Esq.<br>**ABBEY WEITZENBERG, WARREN &**<br>**EMERY, P.C.**<br>100 Stony Point Road, Suite 200<br>Santa Rosa, CA 95401 | Attorney for Plaintiffs<br>**MEYERS FINANCIAL SERVICES, INC.**<br>and **LILLIAN MEYERS**<br><br>Tel: (707) 542-5050<br>Fax: (707) 542-2589<br>Email: lwareen@abbeylaw.com<br>Email: mwanser@abbeylaw.com |